UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MORGAN & BLEY, LTD., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | No. 14 C 06567 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| VICTORIA GROUP, INC. and | ) | |
| NORTHBROOK BANK & TRUST, | ) | |
| | ) | |
| Defendant-Appellees. | ) | |

**MEMORANDUM OPINION AND ORDER**

This appeal arises out of Appellant Morgan & Bley's quest to get attorneys' fees for its work on Appellee Victoria Group's bankruptcy. Victoria Group and one of its creditors, Appellee Northbrook Bank & Trust, oppose those fees. In a June 2014 hearing, the bankruptcy court concluded that Morgan & Bley's proposed fees were reasonable but did not want to give Morgan & Bley a "judgment" that would allow the law firm to collect those fees from the debtor. The court nevertheless entered an order that appeared to award Morgan & Bley its requested fees in full. Armed with that order, Morgan & Bley went to state court to try to collect. When Northbrook Bank was served with a third-party citation to discover assets, it returned to the bankruptcy court and asked that the bankruptcy case be reopened and the fee award vacated. On July 17, 2014, the bankruptcy court denied this request, saying: "The motion to reopen and to vacate is denied as the Order granting Morgan & Bley's fee application contained no mistake and the award was against the bankruptcy estate, not the Debtor, and the Court did not enter a 'judgment.'"

Dkt. 194, Order Denying Mot. Reopen at 1.[1] Morgan & Bley now appeals that order, arguing that it impermissibly modified the earlier award of fees.[2] R. 1, Notice of Appeal. For the reasons discussed below, the July Order is vacated, and the case is remanded to the bankruptcy court for proceedings consistent with this opinion.

## I. Background

Victoria Group, the debtor in the bankruptcy case, owns and operates banquet halls. R. 4, Appellant's Br. at 2; R. 12, Appellee's Resp. Br. at 9. One of the company's primary sources of business is hosting weddings. Appellee's Resp. Br. at 9. Northbrook Bank held a mortgage on one of Victoria's banquet facilities and initiated foreclosure proceedings on that property. *Id.* The day before the summary-judgment hearing in foreclosure court, Morgan & Bley filed a Chapter 11 Petition on behalf of Victoria Group. *Id.* The bankruptcy court granted Morgan & Bley's application to be employed as counsel for the debtor under 11 U.S.C. §§ 327, 328, and 1107(b). *See* R. 1-3, Docket Sheet at 6. Northbrook Bank was Victoria's principal secured creditor. Appellee's Resp. Br. at 9.

According to Northbrook Bank, the bankruptcy was plagued by problems. Dkt. 84, Mot. Appoint Trustee at 2-3. Northbrook Bank claimed that Victoria had written several checks before filing its bankruptcy petition to pay off pre-petition debts; that it had initiated post-petition payment of pre-petition debts; that it had

---

[1]For ease of reference, for documents first filed during the bankruptcy case, the Court cites to the bankruptcy court's docket entry number ("Dkt. [number]") from *In re Victoria Group, Inc.*, No. 13-44677 (Bankr. N.D. Ill.), followed by a description of the document in question. Citations to this Court's docket are noted as "R. [docket entry number]."

[2]As will be discussed more fully below, the Court has subject matter jurisdiction over this bankruptcy appeal under 28 U.S.C. § 158(a)(1).

2

made substantial payments to companies owned by its own officers; and that the company was unwilling or unable to create a reasonable and accurate budget. *Id*. Based on these issues, Northbrook Bank moved to appoint a trustee to manage the debtor's estate. *Id*. Shortly after Northbrook Bank filed its motion, Morgan & Bley moved to withdraw as counsel for Victoria Group. Dkt. 85, Mot. Withdraw at 1. The bankruptcy court granted Morgan & Bley's motion. Dkt. 99, Order Granting Mot. Withdraw at 1. Morgan & Bley then filed a final fee petition, seeking $40,085.50 for services rendered to Victoria Group, but less an already-paid retainer of $15,279.50, for a final total of $24,806.00. Dkt. 133, Final Fee Petition. Both Northbrook Bank and Victoria objected to the fee petition, essentially arguing that Victoria did not have the funds to pay Morgan & Bley's fees. Dkt. 137, Northbrook Bank's Objection to Fees at 3-4; Dkt. 151, Victoria's Objection to Fees at 2.

Before the fee petition was resolved, Northbrook Bank filed a motion to dismiss or to convert the bankruptcy case. Dkt. 153, Mot. Dismiss or Convert. Citing many of the same issues discussed in the motion to appoint a trustee, Northbrook Bank argued that the bankruptcy was initiated to avoid paying the bank any judgment awarded in the foreclosure action. *Id*. at 4-15. It asked the bankruptcy court to dismiss the bankruptcy case or, in the alternative, to convert the petition to one under Chapter 7 of the bankruptcy code. *Id*. at 15. Morgan & Bley "reluctantly" objected to Northbrook Bank's motion, arguing that it was entitled to fees (either from Victoria or Northbrook Bank, which it alleged had been paid $21,000 in "rent" from Victoria despite not being Victoria's landlord) before the

3

estate was extinguished by dismissal. Dkt. 179, Morgan & Bley's Resp. to Mot. Dismiss at 1.

On June 17, 2014, the bankruptcy court held a hearing on the motion to dismiss. Dkt. 197, June 17, 2014 Hrg. Tr. At the hearing, Northbrook Bank expressed concern for the weddings scheduled at Victoria's facility throughout the end of October. June 17, 2014 Hrg. Tr. at 7:16-9:14. Specifically, Northbrook Bank argued that any fees paid to Morgan & Bley would come out of the deposits for those weddings, possibly preventing couples from getting the wedding venue that they had paid for (not to mention the impact on Victoria's viability as an ongoing business). *Id.* at 9:6-14, 12:6-10. Victoria agreed. *Id.* at 12:23-15:1. Morgan & Bley objected to this characterization, arguing that, based on the monthly operating reports entered in the bankruptcy case, Victoria had the money to pay Morgan & Bley's fees. *Id.* at 5:15-6:10. The bankruptcy court, though sympathetic to Morgan & Bley's position, was concerned about ensuring that the scheduled weddings could go forward. *Id.* at 24:19-34:16. The court determined that Morgan & Bley's fees were reasonable, but deleted the portion of the proposed order describing the fee award as a "judgment." *Id.* at 31:9-37:11. The court did not want the fee award to be a "judgment" because it did not want Morgan & Bley to do an "end-around" on the court's decision that Morgan & Bley could not recover fees from the wedding deposits by filing a citation against Victoria or a third-party citation to discover assets on Northbrook Bank. *Id.* (stating that Northbrook Bank's concerns "convinced" the court that it should not enter a judgment). The court reasoned that

4

the issue was probably irrelevant anyway, because "the only reason why [Morgan & Bley would] need an order approving fees is if [it were] going to take the money out of the estate. And there is no estate anymore the moment [the court] dismiss[es the case]." *Id.* at 32:10-22. The court ultimately entered an order that read:

> **Order Granting Application Of Morgan & Bley, Ltd. For Final Compensation**
>
> This cause coming on to be heard upon the Application of Morgan & Bley, Ltd. (Keevan D. Morgan and Alanna G. Morgan) or, "the Attorneys") for Final Compensation and Reimbursement of Expenses, it is hereby ordered as follows:
>
> 1. Notice is shortened to the time given and the entities noticed for the Application.
>
> 2. The Attorneys are granted final post-petition compensation in the amount of $38,872.50 and reimbursement of expenses in the sum of $1,213.00, for a total of $40,085.50.
>
> 3. The prior retainer of $15,279.50 is set off against this award for a balance of $24,806.00.

Dkt. 183, Order Granting Fee Petition at 1. Moments later, the court granted Northbrook Bank's motion to dismiss the bankruptcy case. June 17, 2014 Hrg. Tr. at 39:2-4. No party appealed the order granting the fee order.

Despite the bankruptcy court's statements during the June hearing, Morgan & Bley registered the fee order as a judgment and initiated collection proceedings against Victoria in the Circuit Court of Cook County.[3] Appellee's Resp. Br. at 12; Appellant's Br. at 8. After Northbrook Bank was hit with a third-party citation to discover assets, it returned to the bankruptcy court seeking to vacate the order

---

[3]Morgan & Bley intentionally took this action after the fourteen-day window to appeal the order awarding fees expired. Appellant's Br. at 7-8.

5

awarding fees. Dkt. 186, Northbrook's First Emergency Motion to Vacate at 3. The bankruptcy court denied the motion because the bankruptcy case was still closed. Dkt. 198, July 15, 2014 Hrg. Tr. at 4:21-22. The court suggested that the parties "take this up in state court." *Id.* at 4:2-4. After Morgan & Bley stated that it believed the fee order was a judgment, the court responded that "[i]t was not [the court's] intention to [enter judgments], you know, and that's not what they are." *Id.* at 4:10-12.

The next day, Northbrook Bank and Victoria filed another emergency motion—this time asking the court to reopen the bankruptcy case and to vacate the fee award. Dkt. 191, Northbrook Bank's Second Emergency Motion to Vacate at 4-5. Morgan & Bley objected to the motion, arguing that the bankruptcy court had awarded a judgment and that judgment should not be vacated "[j]ust [b]ecause." Dkt. 192, Morgan & Bley's Objection to Emergency Motion at 9. At the hearing on the newest motion, the court reiterated its earlier admonition that the parties should address the issue in state court, but that Northbrook Bank would apparently "rather not make that argument and go the easy route, reopen the case, and ask [the court] to vacate [its] order." Dkt. 199, July 17, 2014 Hrg. Tr. at 3:4-7. The court then asked the parties to describe precisely what mistake the court made in entering the fee award. *Id.* at 3:8-4:11. To the court, the award was "only relevant vis-à-vis an estate, and an estate no longer exists." *Id.* at 5:1-4. Moreover, the court "actually worded the order so it would not be crafted as a judgment for the very purpose that wedding would not be interfered with." *Id.* at 5:15-7:1 (stating that the

6

court could not have been "any clearer on the record what [its] intent was"). Because the court did not believe it had made a mistake, it denied the motion to reopen the estate as unnecessary and said that the parties would "have to deal with it in state court." *Id.* at 7:6-11. The court entered a minute order that said: "The motion to reopen and to vacate is denied as the Order granting Morgan & Bley's fee application contained no mistake and the award was against the bankruptcy estate, not the Debtor, and the Court did not enter a 'judgment.'" Order Denying Mot. Reopen at 1. This is the order the Morgan & Bley now appeals.[4] *See* Notice of Appeal.

## II. Legal Standard

A federal district court has jurisdiction, under 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and reviews the bankruptcy court's legal findings *de novo*. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir.2009). Because this appeal only challenges the bankruptcy court's legal decisions, the Court's review is *de novo*.

## III. Analysis

Although no party appealed the June order awarding fees, that order is at the heart of the issue in this case. After the June 17th hearing, both Morgan & Bley and

---

[4]After this appeal was fully briefed, this Court asked the parties to address its jurisdiction to hear the appeal. R. 15, Jurisdictional Order. The Court asked the parties to address whether Morgan & Bley was actually appealing the June order rather than the July order and, if so, whether the appeal was timely. *Id.* at 1-2. As will be discussed more fully later in this opinion, Morgan & Bley is in fact seeking relief from the July order and its appeal is therefore timely.

7

Northbrook Bank[5] apparently thought that they had been victorious. Northbrook Bank, relying on the bankruptcy court's statements, believed that the court had only determined that Morgan & Bley's fees were reasonable. The court had not entered a "judgment," so Morgan & Bley could not later use the order to collect its fees in another forum. R. 17, Appellee's Suppl. Resp. Br. at 2-3. Morgan & Bley, on the other hand, looked to the language of the June order. On its face, the order appears to grant Morgan & Bley the relief it was seeking—an order awarding its fees in full. R. 16, Appellant's Suppl. Br. at 2. It was not until the July order that the bankruptcy court put its original intentions in writing. It was that confusion that led to the somewhat strange posture of this case: Morgan & Bley is appealing an order that, on its face, is not adverse to Morgan & Bley. That is, although Morgan & Bley opposed Northbrook Bank's motion to reopen the case, it is appealing the order denying that motion.

There are two parts to the July order. The first is the denial of the motion to reopen the bankruptcy case; that ruling is not, on its surface, adverse to Morgan & Bley. *See generally* Morgan & Bley's Objection to Emergency Motion (objecting to the reopening of the bankruptcy case). The second is the bankruptcy court's statement that "the [fee] award was against the bankruptcy estate, not the Debtor, and the Court did not enter a 'judgment.'" Order Denying Mot. Reopen at 1. It is from this portion of the July order that Morgan & Bley appeals. Morgan & Bley argues that this statement by the bankruptcy court effectively modified the June

---

[5]Although Northbrook Bank and Victoria Group both bring this appeal, the remainder of the opinion will refer to both parties as "Northbrook Bank."

8

order awarding a judgment of fees. Appellant's Suppl. Br. at 2. The critical question, then, is whether the second portion of the bankruptcy court's order, which characterized the fee award as something that was not a "judgment" and that was solely against the now-extinguished bankruptcy estate, was in error.

It is the language of the fee order—not the bankruptcy court's intent—that is controlling here. *See Mendez v. Republic Bank*, 725 F.3d 651, 663 (7th Cir. 2013) (holding that, although hearing transcripts and other court documents make the judge's intent clear, "the proper inquiry … should not extend beyond the text of the court's order"). "Litigants as well as third parties must be able to rely on the clear meaning of court orders setting out their substantive rights and obligations, and appellate courts should interpret those orders in the same manner." *In re Trans Union Corp. Privacy Litigation*, 741 F.3d 811, 816 (7th Cir. 2014) (citing *Mendez*, 725 F.3d at 663). In this case, the plain language of the fee award says that Morgan & Bley is entitled to an award of $24,806.00 for its service on behalf of Victoria. *See* Order Granting Fee Petition at 1. Contrary to the stated intent of the bankruptcy judge, the order does not merely state that the fees sought are "reasonable," or that the fees were not collectible. The text of the order simply says that "The Attorneys are granted final-post petition compensation" of $24,806.00. *Id.* Deleting the language calling the award a "judgment" did not change that the order "set forth the relief to which the prevailing party is entitled." *Paganis v. Blonstein*, 3 F.3d 1067, 1069 (7th Cir. 1993) (quoting *Reyblatt v. Denton*, 812 F.2d 1042, 1043 (7th Cir. 1987)) ("To determine whether a judgment is final, the language of the

judgment itself is controlling."). And although the order was not a "final judgment" in the sense that it did not end the case, it was an appealable order (once the bankruptcy was dismissed) and thus a "judgment" under applicable bankruptcy rules.[6] *See* Fed. R. Bankr. P. 9002(5) (defining "[j]udgment" as "any order appealable to an appellate court"); *see also Matter of Taxman Clothing Co.*, 49 F.3d 310, 314-16 (7th Cir. 1995) (allowing appellate review of a final compensation order of an attorney). So the bankruptcy court's statement in the July order that the June fee award was not a "judgment" (in the sense of an enforceable order that is appealable at the case's end) was incorrect.

On a related issue, the bankruptcy court did not have the benefit of a very recent Seventh Circuit case, and thus was also incorrect when it said that the fee award was only against the estate, which ceased to exist when the bankruptcy case was dismissed. Perhaps relying on the reasoning set forth in *In re Sweports, Ltd.*, 511 B.R. 522 (Bankr. N.D. Ill. 2014), the bankruptcy judge believed that the attorneys would not be able to collect the fees once the bankruptcy was dismissed. *See* June 17, 2014 Hrg. Tr. at 32:10-22. But in the intervening months, the Seventh Circuit reversed *Sweports*, holding that there is a "critical difference" between "determining an entitlement to fees and ordering payment of fees." *In re Sweports,*

---

[6]Even if the fee award was not immediately appealable, it became an appealable order (and therefore a "judgment" under Bankruptcy Rule 9002) when the bankruptcy case was dismissed moments later. Courts have held that orders granting interim fee petitions are not appealable "judgments" because they do not "conclusively determine[ ] the entire section 330 compensation to be paid to the attorneys." *In re Boddy*, 950 F.2d 334, 336 (6th Cir. 1991) (internal quotation marks and citation omitted). But even an interim award of fees becomes appealable upon dismissal of the bankruptcy case. *Matter of Behrens*, 900 F.2d 97, 100 (7th Cir. 1990) (holding that an interim fee award is appealable when it is consolidated with the appeal of the final order in the underlying case).

10

*Ltd.*, 777 F.3d 364, 365 (7th Cir. 2015). The Seventh Circuit made clear that, by awarding fees under 11 U.S.C. § 330 (as in this case), the bankruptcy court was "determin[ing] that [the attorney] had a valid claim to a fee in the amount he was seeking." *Id.* at 366-67. "Such a ruling would create a debt of [the debtor to the attorney], and if [the debtor] refused … to pay, [the attorney] could, like any other creditor, sue [the debtor] in state court."[7] *Id.* at 367. The Seventh Circuit concluded that the bankruptcy court could even award fees under § 330 after the bankruptcy case has been dismissed and the estate has been extinguished. *Id.* at 367-68. The bankruptcy court's statement in the July order that the June fee award was only against the "estate," then, was incorrect.

So, notwithstanding the bankruptcy court's intent in entering the June fee award, the court's July interpretation of that order was incorrect based on its express language and in light of controlling law. That is not to say, however, that once the fee award was put to paper, the bankruptcy court's intent became irrelevant. Federal Rule of Civil Procedure 60(a)—applicable to proceedings in bankruptcy through Bankruptcy Rule 9024—exists for just this situation. Under Rule 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). That is, a court can "make the judgment speak the truth." *Paganis*, 3 F.3d at 1072; *see also Klingman v. Levinson*, 877 F.2d 1357, 1360

---

[7]Northbrook Bank's argument that this Court does not have jurisdiction to hear this appeal because the dismissal of the bankruptcy case extinguished any right to collect fees (which, understandably, does not consider the Seventh Circuit's later reversal of *Sweports*) therefore fails.

11

(7th Cir. 1989) ("Whether 60(a) is available depends upon whether the judgment said what the judge actually meant."). Given the bankruptcy court's clear statements of intent on the record, it seems likely that it would be receptive to granting a motion to correct under Rule 60(a).

But the bankruptcy court did *not* grant such a motion, and that failure is the basis for this Court's jurisdiction.[8] As discussed above, the June fee order was—despite the bankruptcy court's intent—a "judgment" that was enforceable against the debtor. When, in the July order, the bankruptcy court said that the fee award was not a "judgment" and was only against the estate, it was, in effect, modifying the fee order. It is this July modification that Morgan & Bley appeals,[9] and the appeal is therefore timely. *See* Notice of Appeal (filed within 14 days after the entry of the July order, as required under Bankruptcy Rule 8002). When it modified the order, the bankruptcy court did not grant an order to correct under Rule 60(a), and it did not enter a corrected order—likely because the court did not believe that it was modifying the June fee order at all. But that was a mistake. The July order acted as an improper modification of the June fee award, and the July order is therefore vacated. Upon vacatur of this order, the bankruptcy judge can consider

---

[8]Jurisdiction to hear an appeal from bankruptcy is, of course, a threshold issue. *See Heller v. Montgomery*, 699 F.2d 399, 400 (7th Cir. 1983) (per curiam). Here, the Court considered jurisdiction first, but thought that a fuller understanding of the unusual posture of this case would be necessary to understand the jurisdictional discussion.

[9]The July order is final (and therefore appealable) because it "resolve[d] substantive rights of the parties." *In re Firstmark Corp.*, 46 F.3d 653, 658 (7th Cir. 1995).

12

correcting the June order to reflect the court's original intent (that is, no award of fees) and Morgan & Bley can make its arguments against that course of action.[10]

## IV. Conclusion

For the reasons discussed above, the July 17, 2014 order of the bankruptcy court is vacated, and the case is remanded for proceedings consistent with this decision.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: May 11, 2015

---

[10]The unusual posture of this case presents yet another unusual result. Morgan & Bley is nominally victorious in this appeal—it received the relief it was seeking with the vacatur of the July order. But in reality, Morgan & Bley might not ultimately be able to recover its fees if the bankruptcy court decides to modify its June order to accurately reflect its intent.